## James E. Armstrong et al., Appellants, v. City of Chicago et al., Appellees.

### Gen. No. 32,497.

1. SCHOOLS AND EDUCATION—*authority to pass rules transferring aged teachers from active to emeritus service.* Rules of the board of education of the city of Chicago that all members of the teaching force over 70 years of age shall be transferred from classroom or supervisory service to emeritus service at reduced salaries are illegal and void in that the board was without legislative authority to pass them.

2. SCHOOLS AND EDUCATION—*rules transferring aged teachers from active to emeritus service operating as wrongful removal.* Rules of the board of education of the city of Chicago that all members of the teaching force over 70 years of age shall be transferred from classroom or supervisory service to emeritus service at reduced salaries operate as removals in violation of Cahill's St. ch. 122, ¶¶ 162, 187, although paragraph 154 provides for transfers, since such provision refers to transfers of individuals and not to a class of teachers, and notwithstanding that paragraph 162 provides that permanency in positions is subject to the rules of the board concerning conduct and efficiency, since the conduct and efficiency refer only to that of an individual teacher.

Appeal by plaintiffs from the Circuit Court of Cook county; the Hon. HUGO M. FRIEND, Judge, presiding. Heard in the second division of this court for the first district at the December term, 1927. Reversed and remanded with directions. Opinion filed February 14, 1928. Rehearing denied February 28, 1928.

DUNNE & CORBOY, I. T. GREENACRE, ALLAN J. CARTER and WILLIS E. THORNE, for appellants.

FRANK S. RIGHEIMER, for appellees; RALPH W. CONDEE, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Cook county, entered October 8, 1926, wherein the court after a hearing dismissed complainants' original bill (filed January 27, 1926) and supplemental bill (filed January 30, 1926) for want of equity. Complainants sought to enjoin the enforcement of certain rules, adopted by the board of education on December 9, 1925, and known as the "Emeritus" rules, wherein it was provided inter alia that "hereafter no member of the teaching force shall be continued in class room or supervisory duties who shall be more than seventy years of age." At the time of the filing of the original bill two of the complainants were 70 years of age and one was 73; two had served as principals or teachers in schools of the city for more than 20 years, and one as a teacher for nearly that length of time; all were performing their respective duties. The appeal was taken to the Supreme Court, but on December 21, 1927, the cause was transferred to this Appellate Court,—the Supreme Court holding that it had no jurisdiction of the appeal. (*Armstrong v. City of Chicago,* 328 Ill. 147.)

The bill was filed also in behalf of all other principals and teachers similarly situated who desired to join as complainants. It alleges that each complainant

is a resident, voter and taxpayer in Chicago; that Armstrong has been and is principal of the Englewood High School, and Dodge of the Hibbard High School; that Miss Hecox has been and is a teacher in the Cameron School; that during their long period of service in the schools each ''has complied with the rules of the board of education concerning conduct and efficiency''; that ''there is no cause within the meaning of the statutes for the removal of any of the complainants from their present positions''; that no charges have ever been preferred against any of them, nor have any of them ever been suspended from their positions; that under the statutes their status as principals or teachers ''should be determined by merit only,'' and each of their appointments ''has become permanent, subject only to the rules of the board concerning conduct and efficiency, and subject to removal for cause in the manner provided by section 161 of the Schools Act''; and that on December 9, 1925, the board of education adopted the following resolution:

''Be it resolved that the rules of the Board of Education of the City of Chicago, be, and the same are, hereby amended by adding a new article to be known as Article 7A, Chapter IV, and to read as follows:

''Section 1. There is hereby created a branch of the educational service of the Board of Education which shall be known as 'Emeritus Service,' to which all members of the teaching force, including teachers, principals, supervisors, directors, district superintendents, assistant superintendents, superintendents other than the Superintendent of Schools, and examiners, except as hereinafter provided, shall be assigned when they shall have respectively reached the age of seventy years. *Provided, however,* that such assignments shall be made only in cases where said persons have been in active and continuous service in the public schools of the City of Chicago for at least twenty years prior to such retirement. Hereafter no member of the teach-

ing force shall be continued in classroom or supervisory duties who shall be more than seventy years of age.

"Section 2. It shall be the duty of the Superintendent of Schools on the first day of January and the first day of July in each year, or as soon thereafter as possible, to report to the Board of Education in writing the names of all persons of the teaching force who have or will have attained the age of seventy years on the first day of February or August next ensuing, and he shall recommend (unless he is of the opinion that charges shall be preferred against such persons in accordance with the statute and rules in such cases made and provided) that such persons shall be retired from regular classroom or supervisory service and shall be assigned to the class of service known as 'Emeritus Service,' and be subject to the call of the Superintendent of Schools or the Board of Education for consultation, advice and such other service as may from time to time be required.

"Section 3. Each person so transferred to 'Emeritus Service' shall be paid annually during the continuance of such service a sum equal to one-half of the average annual salary received by such person during the ten years preceding his transfer to 'Emeritus Service,' but no person so transferred shall receive annually less than fifteen hundred dollars nor more than twenty-five hundred dollars."

The bill further alleges that the board has announced that in the enforcement of said rules it will pay out of the school funds, to those members of its teaching force to be placed in such service, $65,000 for the current year and larger sums thereafter; that on January 13, 1926, the board concurred in a report of the superintendent of schools (No. 13535-B, dated December 31, 1925, copy set forth) wherein there were named 74 principals or teachers in the schools, including complainants, who are more than 70 years of age, or who

will attain that age on February 1, and who will be placed in such service; that the board also has announced that at the meeting, to be held on January 27, 1926, it will select persons to fill the positions of complainants and of all others named in said report; and that said rules, so adopted and so to be enforced, "are contrary to the limitations contained in said Schools Act," and are "beyond the power and authority of said Board of Education, as limited by section 131 of said Act and other sections, as amended," and "are void and of no effect."

The bill further alleges that on January 20, 1926, complainants, and the other persons affected, were notified that on January 31 they would be retired from their classroom and supervisory service and "assigned to the 'Emeritus Service,' subject to the call of the Superintendent of Schools, or the Board, for consultation or advice"; that this will result in their being excluded from their present respective positions without any charges having been preferred against them and without any trials had thereunder; that the proposed action will cause "unlawful and unconstitutional diversions of moneys raised by taxes," will "deprive complainants of property without due process of law," and will be "an abuse of discretion vested by law in the Board of Education"; and that the rules "are arbitrary, unreasonable and void and in violation of the State and Federal Constitutions," that their enforcement will result in a multiplicity of suits, and that complainants have no adequate remedy at law for the recovery of damages thereby to be suffered by them.

The bill prayed for a preliminary as well as a permanent injunction, restraining defendants from enforcing or attempting to enforce the rules as against complainants, from preventing them from performing their classroom and supervisory duties and from transferring them to said emeritus service.

In complainants' supplement bill, filed three days later, the events resulting in their transfer to said service, and in the placing of other persons in their respective former positions, are set forth in considerable detail. The prayer of the supplemental bill is, that the court forthwith issue an injunction order, "directing said Board of Education and Superintendent of Schools to restore complainants to their former status, positions and conditions, and be enjoined from thereafter dismissing, removing or retiring the complainants, or any of them, from their respective status, positions and conditions; and that defendants be commanded to order and cause the several persons, purported to be assigned to take the respective positions of complainants, to desist and refrain from interfering, or attempting to interfere with complainants respectively in their positions and the performance of their duties, as held by them at the time of the filing of their original bill," etc.

On February 4, 1926, complainants' motion for a preliminary injunction was denied. On March 27, 1926, the board of education, its officers and members and the superintendent of schools, filed a joint and several answer to both bills, and in September, 1926, there was a hearing before the chancellor, at which considerable oral and documentary evidence was introduced by both parties. Some evidence offered by complainants was excluded.

On the hearing, the said rules, adopted December 9, 1925, were introduced by complainants, and it appeared that during March, 1926, these rules were twice amended by the board, upon recommendation of the superintendent of schools. In the first amendment the provision in section 1, as to the length of service in the schools, was changed from "twenty" to "fifteen" years, and the words "prior to such retirement" were eliminated, and, in section 2, the words "shall be retired" were changed to read "shall be transferred."

In the second amendment the provision in section 1, as to the length of service in the schools was changed from "fifteen" to "ten" years. It further appeared that shortly prior to January 30, 1926, the three complainants, and others similarly situated, in accordance with said rules and the action of the board, ceased acting as principals or teachers and their respective places, in the performance of classroom or supervisory duties, were taken by others. Both Armstrong and Miss Hecox testified to the effect that since they had been placed in the emeritus service they had not been requested to do much of any work in connection with the schools; that each had received a circular letter from the superintendent of schools, dated January 29, 1926 (introduced in evidence), asking them to select, from a list of about 80 topics, 4 or 5 topics as to which they might assist the board by work or advice in connection therewith; that each had replied to the circular, mentioning certain topics, but that they had not yet been requested to do any work on the topics chosen. Miss Hecox, who latterly had been a teacher in the "sub-normal division" of the schools, testified that on one occasion she was requested to make out a list of books, suitable for the new curriculum committee to read or refer to in making out a course of studies for said subnormal division, and that she complied with the request and made out such a list, taking about fifteen minutes in writing it. The evidence, however, did not disclose that complainants, or any other former principals or teachers assigned to said service, had been required to do any work, or give any advice. Armstrong further testified that he had been receiving a salary of $6,450 per year as a principal of a school, not including about $700 received for services in a summer school, but that since being assigned to said service, he had been receiving a salary, under protest, at the rate of $2,500 per year.

On the hearing, also, there was introduced by com-

plainants a copy, certified by the Secretary of State
of Illinois, of the so-called "Miller Act." It appears
that although this act was passed by both houses of the
legislature before adjournment in June, 1925, it was
not presented to or signed by the governor, and did
not become a law, until May 19, 1926.  See Cahill's
St. 1927, ch. 122, ¶ 269(1) *et seq.*, p. 2296.)  This
act was entitled "An Act to provide for the compul-
sory  *  *  *  retirement of teachers, principals, dis-
trict superintendents and assistant superintendents,
and the payment of retirement annuities."  And it was
further disclosed on the hearing that, while this act
was pending before the legislature, the board of educa-
tion, through its agents, etc., was very active in urging
its passage; and that the board, believing that the
proposed act had failed to become a law in 1925, passed
the rules in question in December, 1925, and amended
them, as shown, in March, 1926.  In section 1 of said
Miller Act it is provided that, "in every city in this
State having a population exceeding 250,000 inhabit-
ants, the board of education of such city shall retire
from active service on February 1 and August 1 of
each year all teachers, principals,  *  *  *  in the pub-
lic schools of such city" in accordance with a graduated
schedule to become operative in the future, viz, in
the year 1926, all teachers, principals, etc., 75 or more
years of age; in the year 1927, all such 74 or more years
of age; in the year 1928, all such 73 or more years of
age; in the year 1929, all such 72 or more years of age;
and in the year 1930, all such 70 or more years of
age.  Inasmuch as about January 30, 1926 (when said
emeritus rules became effective and first were acted
upon), two of the complainants, and some of the other
teachers, were only 70 years of age, it is apparent
that, had said act then been in force, complainants
and such other teachers could not lawfully under said
act be retired, compulsorily, from their positions until
during the year 1929, when they will have reached the

age of 73 years. Section 2 of said Miller Act, Cahill's St. ch. 122, ¶ 269(2), is as follows:

"Each person so retired from active service who served in the public schools of such city for twenty or more years prior to such retirement, shall be paid the sum of fifteen hundred dollars ($1,500) annually and for life from the date of such retirement from the money derived from the general tax levy for educational purposes: *Provided,* that any teacher, principal, * * * so retired and receiving such annuity shall be subject to the call of the superintendent of schools in such city for consultation and advisory service: *And, provided further,* that nothing in this Act contained shall in any way impair or prejudice any rights of a teacher, principal * * *, so retired, to annuity under other statutory provisions concerning any teachers' pension fund, or teachers' pension and retirement fund, established in accordance with the provisions of any statute of this State; and shall not repeal or modify any other such statutory provisions."

An examination of the Session Laws of 1927 (Laws 1927, p. 792; see also Cahill's St. 1927, ch. 122, ¶ 269(1) *et seq.,* p. 2296) discloses that our legislature at that session treated said Miller Act as being one which became in force on May 19, 1926 (about four months before the hearing in the present case) and passed an act amendatory thereof, approved June 24, 1927, in which the title of said act was amended, and a new section, No. 3, was added thereto, providing as well for the voluntary retirement of teachers, principals, etc., "who are 65 or more years of age and who have not reached the age of compulsory retirement as provided in sections one and two" of the act, and the payment to such teachers, etc., in graduated amounts, of "annuities for life from the monies derived from the general tax levy for educational purposes."

Some of the pertinent sections, or parts thereof, of

the Schools Act of 1909, as amended, and particularly some of the 1917 amendments to certain sections, known as the "Otis" amendments, are set forth below. In 1917, sections 128 to 139, inclusive, and section 161, of said Act of 1909, Cahill's St. ch. 122, ¶¶ 152–163, 187, applying to boards of education in cities exceeding 100,000 inhabitants, were amended,— these amended sections becoming in force on April 20, 1917. (Laws 1917, p. 724.) On April 19, 1917, our Supreme Court decided the case of *People ex rel. Fursman v. City of Chicago,* 278 Ill. 318, on the basis of said act of 1909, as in force before said "Otis" amendments became effective; and in the opinion it is said (p. 325):

"By the statute the board of education in cities having a population of 100,000 or more is given complete control of the schools of the city. Among its powers is that of employing teachers and fixing the amount of their compensation. * * * The board has no power to make contracts for the employment of teachers to extend beyond the ensuing school year. * * * A new contract must be made each year with such teachers as it desires to retain in its employ. No person has a right to demand that he or she shall be employed as a teacher. The board has the absolute right to decline to employ or to re-employ any applicant for any reason whatever or for no reason at all. * * * It is no infringement upon the constitutional rights of anyone for the board to decline to employ him as a teacher in the schools, * * *."

It is our opinion that, in passing said "Otis" amendments, the intention of the legislature was to secure for teachers and principals in schools in cities having a population of 100,000 or more, including, of course, Chicago, a permanency in the tenure of their positions, and that they be not required to make yearly contracts with boards of education in such cities. In section

130, as amended, it is provided in part (Cahill's St. 1927, ch. 122, ¶ 154, p. 2279):

"Appointments, promotions and transfers of teachers, principals, assistant and district superintendents, and all other employees in the teaching force, shall be made * * * by the board of education, only upon the recommendation of the superintendent of schools, unless it be by a two-thirds vote of all the members. of the board."

In section 131, Cahill's St. ch. 122, ¶ 154, as amended, it is provided in part:

"The board of education shall, subject to the limitations contained in this Act, establish by-laws, rules and regulations, which shall have the force of ordinances, for the proper maintenance of a uniform system of discipline for both employees and pupils, and for the entire management of the schools, * * *."

In section 137, as amended, it is provided (Cahill's St. 1927, ch. 122, ¶ 161, p. 2281):

"The board of education shall, subject to the limitations contained in this Act, have the power to prescribe the courses and methods of study in the various schools and to employ teachers and other educational employees and fix their compensation."

In section 138, Cahill's St. ch. 122, ¶ 162, as amended, it is provided in part:

"* * * Appointments and promotions of teachers, principals and other educational employees shall be made for merit only, and, after satisfactory service for a probationary period of three years, * * * appointments of teachers and principals shall become permanent, subject to the rules of the board concerning conduct and efficiency, and subject to removal for cause in the manner provided by section 161 of this Act: * * *."

In section 139, Cahill's St. ch. 122, ¶ 163, as amended, it is provided:

"The specifications of the powers herein granted

are not to be construed as exclusive, but the board of education shall exercise all the powers that may be requisite or proper for the maintenance and the fullest development of an efficient public school system, not inconsistent with these (those) general provisions of the school law of the State which apply to all school districts.''

In section 161, as amended in 1917, and as further amended in its last clause in 1923 (Laws 1923, p. 620; see Cahill's St. 1927, ch. 122, ¶ 187, p. 2286), it is provided:

''No teacher or principal who has been or shall be appointed by said board of education shall (after serving the probationary period of three years specified in section 138 of this Act) be removed except for cause, and then only by a vote of not less than a majority of all members of the board, upon written charges presented by the superintendent of schools to be heard by the board, or a duly authorized committee of the same, after thirty days' notice with copy of the charges, is served upon the person against whom they are preferred, who shall have the privilege of being present, together with counsel, offering evidence and making defense thereto. At the request of any party such hearing shall be public. The action and decision of the board in the matter shall be final. Pending the hearing of such charges, the person charged may be suspended as by the rules of the board may be prescribed: *Provided, however,* that in the event of acquittal, such person shall not suffer any loss of salary by reason of this suspension.

''If at any time, prior to the completion of 25 years of service, within the meaning of this Act, any member of the teaching force who is willing to continue in the service of said board of education is removed from said service as provided in this section; or if at any time, prior to the completion of 25 years of service, within the meaning of this Act, any member of the

teaching force retires voluntarily from the said service, then in either such case such member shall, upon application to said board of trustees, be paid back all the money he or she may have contributed to said fund.''

Said section 161, as so amended, appears among the sections of the ''Schools Act'' of 1909, numbered 152 to 165, inclusive, headed ''Teachers' Pension Fund.'' (See Cahill's St. 1927, ch. 122, ¶¶ 176–191, p. 2282 et seq.)

The main contentions of complainants' counsel, urged for the reversal of the decree dismissing complainants' bills for want of equity, are, in substance, (1) that said emeritus rules are illegal and void, in that the board of education was without legislative authority to pass them; and (2) that the compulsory retirement thereunder of complainants from their positions as principals or teachers in the schools was in effect a removal, in violation of the provisions of sections 138 and 161 of the Schools Act, Cahill's St. ch. 122, ¶¶ 162, 187, as amended by the ''Otis'' amendments. After examining the statutes and considering the evidence introduced on the hearing, we are of the opinion that these contentions have substantial merit.

Under said section 138, as amended, complainants' positions as principals or teachers in the schools had become permanent, subject (1) ''to the rules of the board concerning conduct and efficiency,'' and (2) ''to removal for cause in the manner provided by section 161 of this Act.'' On the hearing, defendants' counsel admitted that, prior to the time of complainants' assignment to the emeritus service, no attempt had been made to remove complainants from their respective former positions under amended section 161, that no written charges had been preferred against them and that no hearing on any charges had been had. Counsel stated that the only fact, militating against their retention of said positions, was that they were 70 or

more years of age. Defendants' counsel further admitted that, if complainants' assignment to the emeritus service be considered as a removal (as distinguished from a transfer), the board of education did not have sufficient statutory authority to so assign complainants; but they contended, and contend here, that complainants only were transferred to "another class of service in the educational department," in which the duties of giving consultation, advice, etc., had been prescribed by the rules. Counsel further contended, and contend here, that authority for making such a transfer of teachers or principals as a class, is found in amended section 130 of the Schools Act, Cahill's St. ch. 122, ¶ 154, wherein it is provided that "appointments, promotions and transfers of teachers, principals, etc., shall be made," etc. We cannot agree with either of these contentions. We think that complainants in effect were removed from their positions as principals or teachers, in violation of the provisions of said amended section 161, and that the words "appointments, promotions and transfers," as used in section 130, have reference to individual appointments, promotions and transfers, rather than to a class of teachers or principals, etc. The evidence introduced on the hearing discloses that the services or duties, which complainants (under the emeritus rules and after their transfer to such service) were expected to perform and actually were called upon to perform, were unsubstantial; and also tends to show that the real intent of the board, in passing and acting upon said rules, was to retire complainants, and other principals and teachers who had reached 70 years of age, virtually upon a pension, and that the consultation and advisory service, as mentioned in the rules, was in the nature of a pretense or disguise, giving color to the claim that complainants still were in the educational service, whereas in fact they really had been retired or removed therefrom.

Defendant's counsel, in defending the board's actions complained of, direct attention to the fact that the permanency of complainants' positions as principals or teachers, as provided in said section 138, was "subject to the rules of the board concerning conduct and efficiency," and also that amended section 139 provides that "the board of education shall exercise all the powers that may be requisite or proper for the maintenance and fullest development of an efficient public school system." Counsel contended in substance before the chancellor, and contend here, that, because of these provisions and without regard to those contained in said amended section 161, the board of education had statutory authority to pass the rules in question, and to retire thereunder complainants and the other principals and teachers as a group or class after their reaching the age of 70 years, upon the presumption that all in such group or class, solely because of age, had become inefficient to perform classroom or supervisory duties, although none of the individuals of the group or class had been shown to be inefficient to perform such duties. We cannot agree with the contention. We think that the words "concerning conduct and efficiency," as used in said amended section 138, clearly refer to the conduct and efficiency of an individual principal or teacher, etc. One of the definitions of the word "conduct," as found in the Century Dictionary, is "personal behavior or practice," and one of the definitions of "efficiency" is "the state of possessing or having acquired adequate knowledge or skill in any art, profession, or duty." Considering together the provisions of amended sections 138, 139 and 161, Cahill's St. ch. 122, ¶¶ 162, 163, 187, we think the board of education could pass reasonable rules as to the personal conduct and efficiency of principals, teachers, etc.; that the permanency of the tenure of such employees would be subject to such rules; and that, if it be proven that any one of such employees,

after charges preferred and a hearing had, had violated said rules or had ceased to measure up to them, such employee as an individual might be retired or removed; but we do not think it was the legislative intent that the board might retire, and in effect remove, all the principals or teachers, or other employees, of a class, solely upon the ground that each individual in that class, because of reaching a certain age, should be presumed to be inefficient, without charges being preferred as to the inefficiency of each individual, and without an opportunity being given him to defend at a hearing, and without any proof of his actual inefficiency.

Complanants' counsel, as further grounds for a reversal of the decree appealed from, also contend that the emeritus rules are invalid, (a) because they provide for the disbursement of public money without substantial services being rendered therefor, and (b) because they in effect attempt to establish a pension system in conflict with the teachers' pension provisions as contained in the Schools Act. In view of our above holdings we do not deem it necessary to discuss or decide these questions.

In conclusion, we are of the opinion that the circuit court erred in entering the decree dismissing complainants' bills for want of equity. Accordingly, such decree is reversed and the cause is remanded to the circuit court, with directions that it enter a decree directing the board of education to restore complainants to their respective positions, as principals and teachers in the Chicago public schools, as of the date of their said retirement or removal therefrom by said board about January 30, 1926, but that their tenure in said positions be subject to the provisions of said "Miller Act," as originally in force on May 19, 1926, and as amended on June 24, 1927.

*Reversed and remanded with directions.*

BARNES, P. J., and SCANLAN, J., concur.